Mark Aussieker
8830 Olive Ranch Lane
Fair Oaks, CA 95628
Phone: 916-705-8006
aussieker1@gmail.com

*in pro per*

**FILED**

APR 2 6 2019

CLERK, U.S. DISTRICT COURT,
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mark Aussieker<br><br>Plaintiff,<br><br>v.<br><br>Elite Integrity, LLC  and ROYAL<br>ADMINISTRATION SERVICES, INC<br>Defendant(s) | No.   **2: 1 9 - CV - 7 1 0   KJM AC PS**<br><br>**COMPLAINT FOR DAMAGES**<br>Trial by Jury not requested |

Plaintiff  MARK AUSSIEKER ("Plaintiff"), on behalf of himself alleges as follows:

1.     Plaintiff Mark Aussieker ("Plaintiff" or "Mr. Aussieker") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act "TCPA", 47 U.S.C. § 227,  a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.     Upon information and belief, Defendants have placed telemarketing calls to a telephone number Mr. Aussieker had registered on the national Do Not Call Registry without consent. As a result, Defendants are liable for those calls.

3.     Defendants may have hired a vendor to provide the "heavy lifting" for

1

1   locating, qualifying, coordinating potential customers.   DEFENDANT is liable for the

2   vendors actions per *Charvat v. Echostar* and *United States v. Dish Network* matters (FCC-

3   13-54A1 (Dec. Ruling))

4

5

6                                              **PARTIES**

7        4.      Plaintiff Mark Aussieker is an individual and resident of the state of California.

8        5.      Defendant ROYAL ADMINISTRATION SERVICES, INC is a Deleware

9   corporation ROYAL ADMINISTRATION SERVICES, INC is a "person" as defined by 47

10  US.C. § 153 (39) . Will be referred to as "ROYAL"

11       6.      Defendant Elite Integrity, LLC  is an individual and a Califorinia  Limited

12  Liability Company . It is a "person" as defined by 47 US.C. § 153 (39). Will be referred to as

13

14  "AUTO PROTECTION PLUS".

15                                    **Jurisdiction & Venue**

16       7.      The Court has federal question subject matter jurisdiction over these

17  TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

18       8.      Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because the Plaintiff is

19
    a resident of this district, which is where he received the illegal telemarketing calls that are
20
    the subject of this lawsuit.
21

22       9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a

23  substantial part of the events or omissions giving rise to the claims occurred within this

24  District.

25       10.     This Court has personal jurisdiction over the parties because Defendants

26  systematically and continually have conducted business in the State of California.

27
    Likewise, Plaintiff's rights were violated in the State of California and his  claims arose out
28

                                                    2

of his  contact with Defendants from California.

**TCPA Background**

11.     TCPA Background In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**THE TCPA PROHIBITS TELEMARKETING CALLS TO NUMBERS LISTED ON THE DO NOT CALL REGISTRY, UNLESS THE CALLER HAS THE RECIPIENT'S SIGNED, WRITTEN CONSENT.**

12.     The national Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

13.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

14.     A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages.  47 U.S.C. § 227(c)(5).

15.     The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47

C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. Id.

16.     Any person whose receives any phone in violation 47 U.S.C. § 227(b)(1) (A) can sue the violator and seek statutory damages. 47 U.S.C §227(b)(3)(B) This is commonly refered to as the auto dialer statue or ATDS.

47 U.S.C. § 227(b)(1) (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is  charged for the call, unless such call is made solely to collect a debt   owed to or guaranteed by the federal government."

17.     Automatic Telephone Dialing System, which the statute defines as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 USC 227(a)(1). Notwithstanding this limited definition, the Ninth Circuit ruled in Marks v. Crunch San Diego, LLC that an ATDS means more than what the statute says. The question is whether, in order to be an ATDS, a device must dial numbers generated by a random or sequential number generator or if a device can be an ATDS if it merely dials numbers from a stored list."

18.     The Court answered in the affirmative merely that if the dialer dials numbers from a stored list, it is considered an ATDS. Marks decision is now the law of the land in the 9th circuit as of February 19th after the parties settled.

19.     All a plaintiff needs to show is that a call or text message was made using an

1    auto dialer to a number assigned to cellular service, or that the calling party was charged for

2    the call. In this case, both plaintiffs received calls on thier cellular phones where they were

3    both charged for the call.

4                                    **GROWING PROBLEM**

5

6        20.     When Congress enacted the TCPA in 1991, it found that telemarketers called

7    more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8        21.     By 2003, telemarketers were calling 104 million Americans every day, abetted by

9    the proliferation of new and more powerful autodialing technology. In re Rules and Regulations

10   Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11

12       22.     Unfortunately, the problems Congress identified when it enacted the TCPA have

13   grown only worse in recent years.

14       23.     Industry data shows that the number of robocalls made each month increased

15   from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three

16   years.

17       24.     According to online robocall tracking service "YouMail," 5.2 billion robocalls

18   were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last

19

20   visited April 9, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. See

21   id.

22       25.     The FCC also has received an increasing number of complaints about unwanted

23   calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in

24   2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last

25   visited April 10, 2019).

26

27

28

**Factual Allegations**

26.     Plaintiff MARK AUSSIEKER's phone number ending in 8006 was added to the Do Not Call list in February 2003.

27.     Plaintiff has maintained the same cell phone ending in 8006 continuously since 2002.

28.     Plaintiff has never visited AUTO PROTECTION PLUS dealer showroom, called or requested any information from them.

29.     PLAINTIFF does not have a "landline" and uses his cell phones.  There is an "office phone" in the office.

30.     AUTO PROTECTION PLUS holds himself out to be in the business of Marketing [1]  and has a website dedicated to selling of Vehicle service protection plans[2].

31.     AUTO PROTECTION PLUS does not appear to be in the business of selling or leasing motor vehicles.

32.     Plaintiff searched DMV website and called CA occupational licensing to and concluded that  AUTO PROTECTION PLUS  was not a licensed dealer.

33.     AUTO PROTECTION PLUS lists its address 12900 garden grove blvd STE 214. in the municipal jurisdiction of Garden Grove.  The municipal jurisdiction designated the area or "zonded" as a planned use development.   Auto lessors or dealers are not allowed to operate in that area and are confined to C-2 and C-3[3].

34.     Even if AUTO PROTECTION PLUS  was licensed under another dealership name,  DMV each requires location have a branch license which would cause the dealership to

---

[1] 2019 Elite Integrity, LLC  Secretary of State "statement of information"
https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=201412610198-25653543
[2] https://yourautoprotection.com/
[3] https://www.qcode.us/codes/gardengrove/view.php?topic=9-9_16-9_16_020-9_16_020_030&frames=on

6

1    obtain a branch license which precludes this location from being licensed due to the zoning.

2        35.     ROYAL ADMINISTRATION SERVICES, INC [4] is licensed by the department

3    of insurance to be an obligor for vehicle service contracts (VSCP).

4        36.     VCSP's are required to sell through "sellers"[5] which is defined as  2800(f) and ,
5
6    a dealer or lessor-retailer licensed in one of those capacities by the Department of Motor

7    Vehicles and who sells vehicle service contracts incidental to his or her business of selling or

8    leasing motor vehicles[6]

9        37.     CA department of insurance has published substantial literature warning [7]

10   California consumers about illegal VSC plans.

11       38.     ROYAL's license was conditioned on the department of insurance approving
12
13   how ROYAL would ensure compliance with CIC sections 12800(f) and 12810[8].

14       39.     AUSSIEKER alleges that ROYALs ensured to comply with CIC sections

15   12800(f) and 12810, yet still used unlicensed dealers.

16       40.     AUSSIEKER is informed and believes that others have complained to ROYAL

17   in the past about illicit telemarketing calls.

18       41.     AUSSIEKER sees  that there are many public negative reviews for AUTO
19
20   PROTECTION PLUS, but these are unverified complaints since PLAINTIFF can not find any

21   DBA for AUTO PROTECTION PLUS.

22       42.     On April 8st, 2019 AUTO PROTECTION undertook the misguided effort to

23   solicit Mark AUSSIEKER on his  cellular phone.

24       43.     During and/or in regard to the 1st Call on April 8th, 2019, Defendant knowingly
25

26   [4] https://www.instagram.com/stories/highlights/17885950048259368/
27   [5] CA insurance code12800(f)
     [6] CA insurance code 12810. (a)
     [7] https://www.insurance.ca.gov/flipbook/vehicleservice/10/
28   [8] http://www.insurance.ca.gov/0200-industry/0050-renew-license/0200-requirements/vehicle-service.cfm

7

and/or willfully:

- o Called AUSSIEKER's cellular telephone without Plaintiff's prior express consent or approval

- o The pre-recorded message is indicative that AUTO PROTECTION used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to place its call to Plaintiff seeking to solicit its warranty.

- o Defendant Failed to check Plaintiffs name and telephone number(s) on its Do-Not-Call List

- o Played a pre-recorded message about the vehicle warranty expiring and the availability of a new warranty.

- o Manipulated the caller-id displayed to show a 408-256-0700.



- o

8

○ After PLAINTIFF disconnected the call, he googled the caller id and saw that the caller had deliberately manipulated the caller id impersonate a legitimate business.

CARRIER NAME Google (Grand Central) BWI - Bandwidth.com - SVR

44.   On 04/23/2019  AUTO undertook the misguided effort to solicit MARK AUSSIEKER on his cellular phone for the second time.

45.   During and/or in regard to the 2nd Call, Defendant knowingly and/or willfully:

○ Called MARK AUSSIEKER's cellular telephone without Plaintiff's prior express consent or approval.

○ used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to place its call to Plaintiff seeking to solicit its services.

○ Defendant Failed to check Plaintiffs name and telephone number(s) on its Do-Not-Call List

○ Played a pre-recorded message played about the availability of a new warranty.

○ A pre-recorded message is indicative of the use of an autodialer.

○ Manipulated the caller-id displayed to show 916-705-5057, a reverse search of the number indicates the number is assigned to

PHONE NUMBER      +19167055057
NATIONAL FORMAT (916) 705-5057
COUNTRY CODE      US
CALLER NAME       KARL SMITH
CALLER TYPE       CONSUMER
CARRIER NAME      Sprint Spectrum, L.P.

46.   Based on plaintiffs previous experience with caller , during the 2nd call Plaintiff MARK AUSSIEKER feigned interest in the call was to identify the telemarketer that was

9

behind the calls[9]. After signing up , MARK AUSSIEKER was told "Auto Protection Plus" was the seller and "Royal Admin Group" was the obligor.

47.     The contract that PLAINTIFF received confirmed that the caller represented Auto Protection Plus" was the seller and "Royal Admin Group" was the obligor.

48.     PLAINTIFF never consented to receive these calls.

49.     PLAINTIFF have a concrete injury being the receipt of such phone calls that Congress intended to remedy through passage of the TCPA.

50.     Plaintiff is self-interested and has been recruited by the reward congress has offered to them. See 47 U.S.C. § 227(b)(3), (c)(5) (providing for recovery of $1500 per violation in case brought by consumer)

51.     AUSSIEKER alleges that ROYAL either knew AUTO PROTECTION PLUS had complaints about its business practices or was willfully ignorant.

52.     Mr. Aussieker's concrete injury as it relates to the *Spokeo* decision is loss of productivity for answering the call, decreased battery life, could not watch television while AUTO furthered his commercial interests, the nuisance of receiving a telephone call and having to wait for the other party to pick up the phone, defendants bothering him with unrequested solicitations.

---

[9] [i]t is safe to say that, when the telemarketers in this case called a phone belonging to Cunningham, they—presumably unwittingly—found themselves in the sights not of an ordinary hapless consumer, but a seasoned plaintiff, likely primed and ready to take them to court if their actions violated the TCPA. Nothing in the Constitution, though, requires a plaintiff to be a naïf. *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1194-95 (M.D. Tenn. 2017

1        CAUSES OF ACTION

2

3                    **COUNT 1**

4    **(1st call - Violation of the Telephone Consumer Protection Act, 47 U.S.C.**

5                    **§227(c)(5)(B)**

6

7    63. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

8    64. Defendant's own conduct and/or by the fact that others made those calls on its behalf,
9    ignoring the Do-Not-Call List, as demonstrated by Defendant's Call to Plaintiffs cell
10   phone, violated 47 U.S.C.§227(c)(5)(B) and 47 C.F.R. §64.1200(d)(6) and, therefore,
11   Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for
12   this violation. In the alternative, Defendant violated the TCPA by the fact that it authorized
13   and employed agents to make such calls on its behalf.
14

15   65. Defendant's own conduct and/or by the fact that others made those calls on its behalf,
16   in failing to check the numbers against a cell phone list constitutes a knowing and/or willful
17   violation of 47 U.S.C. §227(c)(5)(B) and 47 C.F.R. §64.1200(d)(2) . Furthermore,
18   Defendant's conduct, in placing the Call to Plaintiff's cell phone, spoofing the caller id,
19   giving false name of the party calling , not disclosing the true name, telephone number and
20   address of the business constitutes a knowing and/or willful violation of 47
21   C.F.R.§64.1200(b)(2) and 47 C.F.R. §64.1200(d)(4) and therefore, Plaintiff is entitled to an
22   award of statutory treble damages in the amount of $1,500 for this violation.
23

24

25

26

27

28

                          11

## COUNT 2

**(2nd call - Violation of the Telephone Consumer Protection Act, 47 U.S.C.**

**§227(c)(5)(B)**

66. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

67. Defendant's own conduct and/or by the fact that others made those calls on its behalf, in failing to maintain a record of Plaintiffs previous demand that the Plaintiffs name and telephone number go on its Do-Not-Call List, as demonstrated by Defendant's Call to Plaintiffs cell phone, violated 47 U.S.C.§227(c)(5)(B) and 47 C.F.R. §64.1200(d)(6) and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation. In the alternative, Defendant violated the TCPA by the fact that it authorized and employed agents to make such calls on its behalf.

68. Defendant's own conduct and/or by the fact that others made those calls on its behalf, in failing to check the numbers against a cell phone list constitutes a knowing and/or willful violation of 47 U.S.C. §227(c)(5)(B) and 47 C.F.R. §64.1200(d)(2) . Furthermore, Defendant's conduct, in placing the Call to Plaintiff's cell phone, spoofing the caller id, giving false name of the party calling , not disclosing the true name, telephone number and address of the business constitutes a knowing and/or willful violation of 47 C.F.R.§64.1200(b)(2) and 47 C.F.R. §64.1200(d)(4) and therefore, Plaintiff is entitled to an award of statutory treble damages in the amount of $1,500 for this violation.

## COUNT 3

### (1st call - Violation of the Telephone Consumer Protection Act, 47 U.S.C.

### §227(b)(1)(A)(iii) – Auto Dialer

69. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

70. Defendant's own conduct (b) by the fact that others made those calls on its behalf by placing a Call to Plaintiff's cell phone using an automated dialing system, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227(b)(1)(A)(iii) and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation. In the alternative, Defendant violated the TCPA by the fact that it authorized and employed agents to make such calls on its behalf.

71. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT 4

### (1st call - Violation of the Telephone Consumer Protection Act, 47 U.S.C.

### §227(b)(1)(A)(iii) – Pre recorded message

72. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

73. Defendant's own conduct (b) by the fact that others made those calls on its behalf by placing a Call to Plaintiff's cell phone and playing a pre-recorded message, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227(b)(1)(A)(iii) and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation. In the alternative, Defendant violated the TCPA by the fact that it authorized and employed agents to make such calls on its behalf.

74. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT 5

### (2nd call - Violation of the Telephone Consumer Protection Act, 47 U.S.C.

### §227(b)(1)(A)(iii) – Auto Dialer

75. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

76. Defendant's own conduct (b) by the fact that others made those calls on its behalf by placing a Call to Plaintiff's cell phone using an automated dialing system, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227**(b)(1)(A)(iii)** and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation. In the alternative, Defendant violated the TCPA by the fact that it authorized and employed agents to make such calls on its behalf.

77. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT 6

### (2nd call - Violation of the Telephone Consumer Protection Act, 47 U.S.C.

### §227(b)(1)(A)(iii) – Pre recorded message

78. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

79. Defendant's own conduct (b) by the fact that others made those calls on its behalf by placing a Call to Plaintiff's cell phone and playing a pre-recorded message, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227**(b)(1)(A)(iii)** and, therefore, Plaintiff is entitled

1    to an award of statutory damages in the minimum amount of $500 for this violation. In the

2    alternative, Defendant violated the TCPA by the fact that it authorized and employed agents

3    to make such calls on its behalf.

4

5    80. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b),

6    Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every

7    violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

8

9

10                                    **COUNT 7**

11                                 **RATIFICATION**

12

13   37. AUSSIEKER claims that ROYAL is responsible for the harm caused by AUTO

14   PROTECTION PLUS'S conduct because ROYAL approved that conduct after it occurred.

15   38. That AUTO PROTECTION, although not having a dealership where it could sell

16   warranties, continued to seller on ROYAL's behalf. That ROYAL either knew, or should

17

18   have known that AUTO PROTECTION was gaining customers without a dealership. The

19   unauthorized conduct, and all of the material facts involved in the unauthorized transaction,

20   after it occurred; and that ROYAL then approved AUTOS's conduct.  Approval can be

21   shown through words, or it can be inferred from a person's conduct. Approval can be

22   inferred if ROYAL voluntarily kept keeping the  benefits of AUTO's unauthorized conduct

23   after  they learned of it. ROYAL has been named in other lawsuits and knew.

24

25   39. ROYAL submitted a marketing plan to the department of insurance outlining how it

26   would comply with the selling requirements. With actual knowledge of the requirement and

27   thereafter using an unlicensed seller, ROYAL  ratified .

28

15

## COUNT 8

## Civil conspiracy

40. Plaintiffs incorporate herein by reference the preceding paragraphs as if fully set forth herein, and count against AUTO and ROYAL

41. At the time of the acts alleged herein, AUTO and ROYAL made a plan and followed through with a plan to injure plaintiff. ROYAL hired AUTO to find buyers for its service contract.   ROYAL ensured with the state of California that it would only use licensed dealers who would sell the policies incidental to dealership business. ROYAL either knew or willfully disregarded AUTOS license status. AUTO supplied ROYAL buyers. ROYAL approved of the buyers by accepting the benefit of the transaction while ignoring the relevant state licensing laws.

42. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

43. But for ROYAL hiring AUTO to find buyers,  PLAINTIFF would never have been called and therefore never been harmed.

## COUNT 9

**(FTC violation  and B&P 17511.5(e) and CA civil code1670.6,– cooling off period**

37. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs. ROYAL and AUTO  failed to give plaintiff a copy of the contract, a notice of his cancelation rights or a way to obtain a refund.      The entire agreement is void since the selling party is not licensed as a dealer in

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Elite Integrity, LLC and ROYAL ADMINISTRATION SERVICES, INC Defendant , jointly and severally for the following:

1.    Injunctive relief prohibiting such violations of the TCPA by Defendants in the future.

2.    For an order finding for plaintiff in all counts.

3.    For an order finding the defendant knowingly and willfully violated TCPA

3.    Damages of $1500 per violation in counts 1-6

4.    Any other relief the court deems proper.

5.

Respectfully Submitted this 25th Day of April, 2019.

Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.
Date of signing: 25 Day of April, 2019
Signature of Plaintiff

Printed Name of Plaintiff _Mark Aussieker_____

Date of signing 25 Day of April, 2019